UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

KARON BAKER,

                Plaintiff,

                -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF CORRECTIONS, Martin Horn, as
Commissioner and Individually, NEW YORK CITY
CORRECTIONS OFFICERS JOHN DOES # ONE through
FIVE, THE NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES, Brian Fischer as
Commissioner and Individually, NEW YORK STATE
DIVISION OF PAROLE, NEW YORK STATE PAROLE
OFFICER EDMUND GRANT, THE NEW YORK CITY
POLICE DEPARTMENT, NEW YORK CITY POLICE
OFFICER GREGORY LARSON, 44th Precinct, NEW
YORK CITY POLICE OFFICER JESUS GUZMAN,
Shield #31476 Narcotics Borough Bronx,

                Defendants.

**09 CV 10604 (HB)**

**OPINION & ORDER**

------------------------------------------------------------------------ x

**Hon. HAROLD BAER, JR., District Judge**:

      Plaintiff Karon Baker commenced this civil rights action pursuant to the Civil Rights Acts of 1866 and 1871, U.S.C. § 1981 and 1983; the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and New York State law, against Defendants the City of New York; the New York City Department of Corrections ("NYC DOC"); Martin Horn, as Commissioner of NYC DOC and Individually; New York City Corrections Officers John Does 1-5; the New York City Police Department; New York City Police Officer Gregory Larson, New York City Police Officer Jesus Guzman (collectively, the "City Defendants"); the New York State Department of Correctional Services ("DOCS"); Brian Fischer, as Commissioner of DOCS and Individually; the New York State Division of Parole, and New York State Parole Officer Edmund Grant (collectively, the "State Defendants"). Plaintiff alleges that his civil rights

were violated when he was arrested on two separate occasions for parole violations, and again when he was arrested on a narcotics charge that was later dismissed.

The City Defendants filed an Answer to the Complaint and on October 4, 2010, reached a settlement with Plaintiff, pursuant to which the substantial majority of Plaintiff's twenty-seven enumerated causes of action were dismissed. The State Defendants moved to dismiss the claims asserted against them, namely, a claim for unlawful detention of Plaintiff in violation of the 8th and 14th Amendments (Am. Cplt. ¶¶ 18, 19, 39); a claim for cruel and unusual punishment, also in violation of the 8th and 14th Amendments (Am. Cplt. ¶ 47); and a state law claim for negligent training and supervision by DOCS and Commissioner Brian Fischer of Parole Officer Grant (Am. Cplt. ¶ 70). For the reasons that follow, Plaintiff's remaining claims must be dismissed.

## I.   BACKGROUND

### A.   Factual Background

Plaintiff Karon Baker was convicted in New York State Supreme Court, upon a plea of guilty, to attempted criminal sale of a controlled substance in the third degree and attempted criminal possession of a weapon in the third degree. See Def's Ex. C (People ex rel. Karon Baker et al. v. New York State Division of Parole, et al., Sup. Ct. Bx. Cty. Index No. 250851-07 (Feb. 6, 2008)). On June 11, 2001, Plaintiff was sentenced as a second felony offender to an indeterminate sentence of three to six years on the controlled substance charge, and a determinate sentence of three years on the weapon charge, which were to run concurrently. Am. Cplt. ¶ 15. The sentencing court did not impose post-release supervision ("PRS"), commonly known as parole, as part of the sentence, nor did the clerk make any record of post-release supervision on the commitment sheet. Id; Def.'s Ex. C at 1. Plaintiff alleges that shortly before his release from prison on September 2, 2004, the New York State Department of Correctional Services ("DOCS") executed a Certificate of Release to Parole Supervision pursuant to which Plaintiff was to remain under parole supervision until September 2009. Am. Cplt. ¶ 15.

Plaintiff alleges that he was subsequently arrested for two parole violations, despite the fact that PRS was not imposed by the sentencing court as part of his sentence. Id. Plaintiff was arrested on June 17, 2007, by two unidentified New York State parole officers, for allegedly violating the terms of his PRS. He was released on August 23, 2007, when he was putatively restored to parole to be supervised by Defendant Grant, a state parole officer. Id. Plaintiff alleges that he was again arrested for violating the terms of his PRS, this time by Defendant Grant, on November 14, 2007, and was held in custody by the New York City Department of Correction ("NYC DOC") until his release on February 11, 2008. Id. Plaintiff alleges that his release was pursuant to a Writ of Habeas Corpus granted by the Supreme Court, Bronx County. Id.; see Def.'s Ex. C.

### B. Legal History

On August 6, 1998, the New York state legislature enacted "Jenna's Law," a statute that prohibits indeterminate sentences for violent felonies. See N.Y. Penal Law § 70.02. When it took effect, Jenna's Law also imposed a mandatory term of post-release supervision ("PRS") to be included as part of the sentence for certain violent felony offenders. See N.Y. Penal Law § 70.45(1) ("Each determinate sentence also includes, as a part thereof, an additional period of post-release supervision") (amended 2008). Between 1998 and 2006, New York state courts repeatedly ratified administrative imposition of PRS. See Scott v. Fischer, 616 F.3d 100, 104 (2d Cir. 2010) ("New York state courts had repeatedly ratified administrative imposition of PRS.").

On June 9, 2006, the Second Circuit held that it was unconstitutional for DOCS to impose PRS as that agency lacks the power to do so. See Earley v. Murray, 451 F.3d 71, 75 (2d Cir. 2006) ("Only the judgment of a court, as expressed through the sentence imposed by a judge, has the power to constrain a person's liberty."). For the next two years, New York courts were in disagreement regarding the propriety of administratively imposed PRS. See Rodriguez v. Fischer, No. 08 Civ. 4662, 2010 WL 438421, at *6 (E.D.N.Y. Feb. 3, 2010) (noting that some New York courts continued to uphold the practice after the Earley decision, while others followed Earley and found the imposition of PRS improper). In two cases decided on April 29, 2008, the New York State Court of Appeals struck down administratively imposed PRS, holding that sentencing is a judicial

3

function.  See People v. Sparber, 10 N.Y.3d 457, 470 (2008) ("[E]ven in cases with mandatory PRS terms, the defendant still has a statutory right to hear the court's pronouncement as to what the entire sentence encompasses, directly from the court"); Garner v. New York State Dep't of Correctional Services, 10 N.Y.3d 358, 362 (2008) ("[T]he sentencing judge-and only the sentencing judge-is authorized to pronounce the PRS component of a defendant's sentence.").  Two months later, on June 30, 2008, the New York State Legislature created a statewide statutory framework to resentence those inmates who had improperly received the administrative imposition of PRS. See N.Y. Corr. Law § 601-d (2008).

## II.  LEGAL STANDARD

A complaint must be dismissed pursuant Rule 12(b)(6) if plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P.12(b)(6).  To survive a motion to dismiss on this ground, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Where the court finds well-pleaded factual allegations, it must determine whether they "plausibly give rise to an entitlement to relief."  Id. at 1950.  A court must accept as true all of the factual allegations in the plaintiff's complaint. Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009).

To state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege that "some person has deprived him of a federal right" and "the person who has deprived him of that right acted under color of state law."  Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005). Although relief may at times be derived directly from the Constitution, "when § 1983 provides a remedy, an implied cause of action grounded directly in the Constitution is not available." *Lehman v. Doe*, 66 Fed.Appx. 253, 255 (2d Cir. 2003) (citing *Pauk v. Bd. of Trustees of City Univ. of New York,* 654 F.2d 856, 865 (2d Cir.1981)).  Since section 1983 provides a cause of action for claims based on the Equal Protection and Due Process Clauses of the Fourteenth Amendment, *see Collins v. City of Harker Heights*,

503 U.S. 115, 119-120 (1992), I will construe Plaintiff's Complaint as seeking all available constitutional relief provided by that statute.

### III.   DISCUSSION

**A. Sovereign Immunity Bars Claims Against State Agencies**

The Eleventh Amendment, through the doctrine of sovereign immunity, bars suits for damages in a federal court by private parties against a state, state agencies, and state officials acting in an official capacity, unless the parties consent to the suit or there is a statutory waiver. Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 362 (2001); Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996). Furthermore, a plaintiff in a section 1983 action cannot sue the State, its agencies, or its officers in their official capacities pursuant to section 1983, because such defendants are not "person[s] pursuant to the statute. See Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989); Lapides v. Bd. Of Regents, 535 U.S. 613, 617 (2002).

Here, Plaintiff's claims against DOCS and the New York State Division of Parole must be dismissed, because both are state agencies and the doctrine of sovereign immunity bars suits against them. The doctrine also bars all claims made against Defendant Brian Fischer in his official capacity as Commissioner of DOCS.

Claims asserted individually against Commissioner Fischer must also be dismissed, because the Complaint fails to allege any personal involvement by of Commissioner Fischer in the imposition of PRS by the Division of Parole, an essential element in order to sustain a claim pursuant to section 1983. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009) Here, Plaintiff has failed to plead any individual actions on the part of Commissioner Fischer.

**B. Qualified Immunity Bars Constitutional Claims Against State Officers in their Individual Capacities**

The only constitutional claims against the State Defendants not barred by the doctrine of sovereign immunity are those asserted individually against Parole Officer Grant. The doctrine of qualified immunity insulates government officials from "civil

5

damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have or should have known. See Pearson v. Callahan, 120 S.Ct. 808, 815 (2009).  To determine whether a right is "clearly established," courts in this Circuit assess whether: "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." Anderson v. Rencore, 317 F.3d 194, 197 (2d Cir. 2003) (internal quotations and citations omitted).  However, "[e]ven if the right at issue was clearly established . . . an officer is still entitled to qualified immunity if officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." Walcyzk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007)).  Therefore, an officer can make an objectively reasonable mistake about a "clearly established" law and still receive qualified immunity.  Id.

Here, Officer Grant is entitled to qualified immunity for the administrative imposition of PRS upon Plaintiff in 2004 and for his subsequent arrests for violating the terms of his PRS in June 2007 and November 2007.  It was objectively reasonable for Officer Grant to believe that his conduct, in imposing PRS and arresting Plaintiff for violations of PRS, comported with constitutional and statutory requirements.  The practice was in effect at the time Defendant Grant imposed PRS on the Plaintiff.

DOCS first imposed PRS upon Plaintiff in 2004—two years before the Second Circuit decision in Earley that declared administratively imposed PRS unconstitutional. In this early-Earley era, there was no clearly established right prohibiting administratively imposed PRS. See Hardy v. Fischer, No. 08 Civ. 2460, 2010 WL 1325145, at *6 (S.D.N.Y. Mar. 31, 2010) (holding that when plaintiff's PRS was administratively imposed in 2003, it was not yet clearly established that administratively imposed PRS was unconstitutional).  When PRS was administratively imposed in 2004, there was no law in either federal or state courts to suggest that this act would ultimately be ruled unconstitutional—it was entirely reasonable for DOCS, under the oversight of Commissioner Fischer, to impose PRS in 2004.

Furthermore, qualified immunity extends to Defendant Grant for Plaintiff's arrests in June and November 2007, because at that time, New York courts were still in staunch

6

disagreement about whether administratively imposed PRS, and a "reasonable defendant" may well not have understood from the unsettled law at the time that an arrest pursuant to administratively imposed PRS was unlawful.  See Anderson, 317 F.3d at 197; Rodriguez, 2010 WL 438421 at *6.  In Rodriguez, the court held that where a violation of administratively imposed PRS led to incarceration after Earley, officers were still entitled to qualified immunity, New York state courts consistently rejected constitutional challenges to administratively imposed PRS until 2008, and it was reasonable for the officers to believe that their conduct comported with constitutional and statutory requirements.  Id.

Similarly, at the time of Plaintiff Baker's arrest in 2007, there was still no clearly established rule against the administrative imposition of PRS by DOCS. As a result, it was objectively reasonable for Defendants to believe that Plaintiff's administratively imposed PRS was constitutional.  Id.  Not until the Sparber and Garner decisions, which came down two years after Earley and one year after Plaintiff was released from prison, would Defendants have been unable to avail themselves of qualified immunity for arresting and detaining Plaintiff pursuant to administratively imposed PRS.  See, e.g., Santiago v. Fischer, 2009 WL 3852001, at *6 (rejecting a defendants' qualified immunity defense where plaintiff was arrested in September 2008, after the Sparber and Garner decisions).  In sum, Defendants are entitled to qualified immunity for their actions before the Sparber and Garner decisions.  Defendants' motion to dismiss is granted.

### C.  State Law Claim Must Be Dismissed

Plaintiff's Amended Complaint also contains a state law claim asserted against DOCS, Commissioner Fischer, and the Division of Parole for negligent training and supervision of Defendant Grant.  See Am. Cplt. ¶¶ 69-70.  Because Plaintiff's section 1983 claims against DOCS, Fischer, and the Division of Parole are barred by sovereign immunity and qualified immunity, this Court chooses not to exercise pendent jurisdiction to hear plaintiff's state law claim against those defendants.  See Pennhurst State School & Hosp. et al. v. Halderman et al., 465 U.S. 89, 99 (1984).

## IV. CONCLUSION

For the foregoing reasons, the State Defendants' motion to dismiss is hereby GRANTED and the Complaint dismissed. The Clerk of Court is instructed to close this case and remove it from my docket.

**SO ORDERED**
October 29, 2010
New York, New York

U.S.D.J.